HAYES *v.* TIGGINS.

4-8505

211 S. W. 2d 112

Opinion delivered May 17, 1948.

*C. M. Martin,* for appellant.

*J. Bruce Streett* and *Rowell, Rowell & Dickey,* for appellee.

GRIFFIN SMITH, Chief Justice. The appeal is to reverse a decree directing that the oral contract appellee asserted be specifically performed by conveyance of real property. The parties were formerly husband and wife. During the marital relationship they acquired by the entirety a house and lot in the City of Camden, having paid $300 for the property in 1936.

Cubie Hayes moved to Nebraska. Following a divorce in 1942 Cubie, according to his testimony, paid taxes on the property at Camden for 1944, but thereafter neglected to do so. Appellee testified that Cubie returned to Camden, and in October 1946 talked with her by telephone at Pine Bluff. At that time there was an offer by the former husband to sell his interest in the realty for $125, and an acceptance. The day following this conversation Christine procured two postal money orders payable to Cubie, one for $25 and the other for $100.

Christine testified that after talking with Cubie she consulted a lawyer, who prepared two deeds. In one of these she conveyed to her uncle, Albert Gordon, it being

contemplated by her that Cubie would execute the same document. The other deed would have been a transfer of title from Gordon to appellee. In transmitting the papers to her uncle, Christine wrote: "I am sending you the amount of $125 to hold until Cubie signs this quitclaim deed. . . . He is crazy anyway, and I rather not come in contact with him any more. . . . Let me know what you or he did about it by return mail. . . . I notified Cubie that I was sending the money to you. Please contact him . . . at your earliest convenience."

On cross-examination Christine admitted that Cubie did not tell her to send the money and deed, "But I thought that was the proper way. . . . He did not tell me he would sign the deed."

Albert Gordon testified that he received the deeds and money orders from Christine, but had not formerly communicated with her regarding the transaction. The first information came to him with the letter and papers. He tried on several occasions to find Cubie, but failed.

Cubie Hayes testified that he had been working in Omaha, sometimes earning as much as $75 per week; and after leaving Arkansas he sent money to his wife. The purpose in returning to Camden was to see about his furniture, and rentals. His understanding was that the property had been let for $9 a week. Explaining the conversations with Christine, Cubie testified that he called her regarding the furniture, some of which she had moved.—"I told her I was entitled to part of it. I mentioned some of the things: the living room suite, gas stove, couch, and a few other items I had paid for, including an ice box. . . . She wouldn't talk about the rents; said she would see her lawyer. Then I told her I would take $125 for my part of the rents and furniture. Nothing was said about selling the house. . . . She didn't mention Gordon to me. I didn't see him, or know he had anything to do with it."

There was testimony by persons who claimed to have heard Cubie talking with Christine, and by others who said they heard Christine talking with Cubie. Each wit-

ness, in the main, supported what the principal had said. Cubie testified he had saved $450 at the time the property was bought, and from this the $300 payment was made. Christine just as positively testified that her money was used, and that she asked the seller (H. M. Pace) to put Cubie's name in the deed. She then said that she "gave" her husband money with which to pay for the property.

The Chancellor, in decreeing specific performance, said that in his opinion Christine's money was paid to Pace. It is our view, however, that when the testimony is considered as a whole it is not sufficiently convincing to justify the decree.[1] Christine, while answering that she did not know what the property was worth, would not say the value was less than $2,000. In response to the question, "What would you say the place was worth in October, 1946," she replied, "I imagine a thousand dollars or more." Another witness thought $1,200 was a fair price.

There are strong circumstances sustaining appellant's contention that the offer to sell for $125 had reference to the interest he claimed in furniture and rentals. We do not think the burden of proving a valid contract was met, and the decree must be reversed, each litigant to pay half of the costs. It is so ordered.

---

[1] The complaint did not say whether the contract relied upon by the plaintiff was written or oral; hence the statute of frauds was not pleaded.